IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GEORGE FONJUNGO,

    *Plaintiff*,

    v.

RITE AID CORPORATION

    *Defendant*.

Civil Action No. ELH-16-760

**MEMORANDUM**

Plaintiff George Fonjungo, who until recently was self-represented, worked as a pharmacist at a Rite Aid pharmacy in Edgewood, Maryland from July 8, 2014 until March 11, 2015. At all relevant times, plaintiff was over the age of forty. *See* ECF 24 at 5. He alleges in an Amended Complaint (ECF 24) that he was terminated and retaliated against by defendant Rite Aid Corporation ("Rite Aid")[1], in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621, *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.* ECF 24 at 4.[2]

Now pending is Rite Aid's motion to dismiss only the Title VII claim, pursuant to Fed. R. Civ. P. 12 (b)(1) and Fed. R. Civ. P. 12(b)(6), on the grounds that plaintiff failed to exhaust his

---

[1] In its Motion to Dismiss, Rite Aid states that Rite Aid of Maryland, rather than Rite Aid Corporation, is the proper defendant. ECF 25 at 1.

[2] In his suit (ECF 1; ECF 24), plaintiff did not identify the basis of his Title VII claim, such as race, color, national origin, sex, or religion. Moreover, plaintiff failed to check boxes on the form pleading for his Amended Complaint that he had previously checked in connection with the filing of his Complaint (ECF 1). But, he stated, ECF 24 at 11: "My original complaint still stands but I would like . . . to expand" the retaliation claim. Plaintiff also includes with the Amended Complaint a supplement that consists of four and a half pages of typed, single-spaced text. *See* ECF 24 at 9-14.

administrative remedies and has failed to state a claim. ECF 25 at 1.[3] The motion to dismiss is accompanied by a memorandum of law (ECF 25-1) (collectively, the "Motion") and an exhibit. ECF 25-2. The Motion seeks dismissal solely as to plaintiff's Title VII claim. ECF 25. Fonjungo responded in opposition to the Motion (ECF 29) ("Opposition"). Rite Aid has not replied, and the time to do so has elapsed. *See* Local Rule 105.2

On April 18, 2017, during the pendency of the Motion, counsel entered an appearance on behalf of Fonjungo. ECF 30. However, because Fonjungo was self-represented when he filed his Amended Complaint, I shall construe the pleadings liberally; the pleadings of a pro se litigant are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989).

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion and dismiss the Title VII claim.

## I.        Background[4]

Fonjungo was hired by Rite Aid on July 8, 2014. ECF 24 at 6. According to Fonjungo, when he was being interviewed for the job, Ansu Green, the pharmacy supervisor, was impressed by "[his] resume and [his] presentation." *Id.* Nevertheless, Fonjungo alleges that Green was reluctant to hire him based on his appearance, and she said to him: "I don't think you

---

[3] Rite Aid previously moved to dismiss Fonjungo's claims in his Complaint (ECF 1) under the "Fair Labor Practices Act", which it interpreted to be a claim under the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201, *et seq*., and under the Civil Rights Act, which it interpreted to be a claim under Title VII. ECF 6. By Memorandum (ECF 17) and Order (ECF 18) of November 22, 2016, I denied Rite Aid's motion to dismiss, finding that it did not appear that plaintiff intended to pursue claims under either Title VII or the FLSA. However, I provided plaintiff with leave to amend his Complaint if he did intend to pursue claims under the FLSA or Title VII. ECF 18. Fonjungo filed his Amended Complaint on January 5, 2017. ECF 25.

[4] Given the procedural posture of the case, I accept as true the facts asserted in the Amended Complaint.

can handle it." ECF 24 at 6. Green subsequently relented and hired plaintiff after her secretary, Stacey Henry, intervened, arguing that the pharmacy needed additional help to mitigate a staffing shortage that was expected to last until recent graduates passed the board exams in September. *Id*. Fonjungo claims that at the time he was hired, Henry stated: "[T]his shortage is not going to last forever. We will be placing new younger graduates who have been promised positions in September, when they start receiving their licenses from the board." *Id*. at 9.

Fonjungo was hired by Rite Aid to work full time, at seventy-seven hours every two weeks. *Id*. However, from the time he began working for Rite Aid, he "averaged 65 to 70 hours a week for about six to seven weeks . . . ." *Id*. On August 25, 2014, Green met with Fonjungo in her office and "said she wanted [him] to resign" and said that he "can't handle it." *Id*. When Fonjungo asked Green if her request for him to resign "had anything to do with [his] age or the fact that they [were] getting new hires in September", Green responded "maybe." *Id*. Fonjungo refused to resign. *Id*.

At some point during the following week, Fonjungo sent Green an email in which he claimed that she wanted to terminate his job. *Id*. She replied "No." *Id*. Thereafter, Green scheduled a meeting with Fonjungo, which was also attended by a human resources employee. *Id*.[5] At the meeting, Green stated, *id*: "[S]ince you won't step down, I intend to watch you like a hawk, I will put a shine upon you. If you make any mistake and especially if you have any complaints, customer complaints, I will put it on your record and I will write you up and have you terminated." *Id*. Fonjungo claims, *id*.: "In effect she was going to retaliate on me for refusing to resign by holding me to a higher standard above every other Pharmacist. I was on notice so I had to be extra careful." *Id*.

---

[5] Fonjungo does not provide a date for this meeting. *See id.*

Subsequently, Green "wrote [Fonjungo] up three times in the following months always about customer complaints." ECF 24 at 9. And, each time, Green asked Fonjungo if he was ready to resign. *Id*.

Further, Fonjungo claims that he received increased complaints as the result of a "conspiracy" orchestrated by Krishna Mataparthy, a pharmacy manager who was also "the best friend of Ansu Green." *Id*. at 9, 10. For example, on March 6, 2015, a customer came into the pharmacy while Fonjungo was working and informed him that her prescription had been filled incorrectly. *Id*. According to Fonjungo, despite the fact that Mataparthy had filled the prescription, he apologized to the customer and offered to correct the error. *Id*. Fonjungo asserts that, to his surprise, the customer stated: "Well every time I come here and this has happened[,] and this has happened many times, [Mataparthy] said you did it . . . ." *Id*. Fonjungo also asserts that the customer said: "[Mataparthy] has given me the toll free number and urged me to call and complain about you." *Id.*

On Friday March 6, 2015, after the incident with the customer, Fonjungo sent a letter to Mataparthy seeking an explanation. *Id*. Mataparthy then called Fonjungo "many times over the weekend" of March 7-8, 2015, demanding to know the name of the customer with whom he spoke. *Id*.

On March 10, 2015, Green scheduled another meeting with Fonjungo for March 11, 2015. *Id*. At that meeting, which was attended by a human resources employee, Green informed Fonjungo that he was to be terminated because of customer complaints. *Id*.

Fonjungo filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on April 14, 2015. *Id*. at 6; *see* ECF 25-2 at 3-4. In the Charge, plaintiff checked the box adjacent to "Age", but not the boxes adjacent to race, color,

sex, religion, national origin, or retaliation.  ECF 25-2 at 3.  In the Charge, Fonjungo stated: "I believe I have been discriminated against In violation of the Age Discrimination in Employment Act of 1967, as amended, regarding unequal terms and conditions of employment, discipline and discharge based on my age (54)."  *Id.* at 4.  Nowhere in the Charge does Fonjungo indicate that he was discriminated or retaliated against on the basis of his race, color, religion, or national origin.  *See id.*

The EEOC sent a "Notice of Charge of Discrimination" ("Notice") to Rite Aid on April 24, 2015, indicating that plaintiff had filed the Charge.  *Id.* at 2.  In the Notice, the EEOC stated that the Charge alleged violations of the ADEA and that the "circumstance[] of alleged discrimination" was "Age."  *See id.*

Fonjungo received a "Right to Sue letter" from the EEOC on December 19, 2015.  ECF 24 at 6; *see* ECF 15-1 at 15 (Right to Sue letter).  In the Right to Sue letter, the EEOC stated, *id.*:

> The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

The "Right to Sue letter" also informed Fonjungo of his right to file a lawsuit in federal court within ninety days.  *Id.*

## II.      Standard of Review

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P. 12(b)(1).  Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction.  *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A test of subject matter jurisdiction under Rule 12(b)(1) may

proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). A factual challenge can also assert that other facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Id*.

Rite Aid brings a factual challenge because it argues that Fonjungo failed to exhaust the administrative remedies for his claim under Title VII. ECF 25 at 4-6. Therefore, Rite Aid asserts that facts not included in the Complaint deprive the Court of subject matter jurisdiction as to the Title VII claims.

In considering a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov' t of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits.") (Citation omitted). In this regard, Rite Aid has submitted plaintiff's Charge of Discrimination. ECF 25-2 at 3-4.

### III. Discussion

#### A.

I pause to review Title VII and its exhaustion requirement. Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *see Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal–Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014). It also prohibits an employer from retaliating against an employee because the employee filed a grievance or complaint regarding an employment practice that allegedly violated Title VII's antidiscrimination provision. *See* 42 U.S.C. § 2000e–3(a); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 415 (4th Cir. 2015).

However, a plaintiff must file a charge with the EEOC before filing suit in a federal court under Title VII. 42 U.S.C. § 2000e–5(f)(1) (permitting civil suit by the "person claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also, e.g., Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000). This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491; *see also Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 670 (4th Cir. 2015) ("We recognize that a primary objective of exhaustion requirements is to put parties on notice of the allegations against them.").

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). "Allowing [the

EEOC] first crack at these cases respects Congress's intent . . . ." *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012).

Title VII's exhaustion requirement also functions as a jurisdictional bar in federal courts where plaintiffs have failed to comply with it. In *Balas*, 711 F.3d at 406, the Court said: "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *See also Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) ("Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim.")

An aggrieved party who fails to comply with the applicable administrative procedures has failed to exhaust his administrative remedies and is generally barred from filing suit. *See, e.g.*, *Balas*, 711 F.3d at 407; *Miles*, 429 F.3d at 491; *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); *Frank v. England*, 313 F. Supp. 2d 532, 536 (D. Md. 2004) ("Before an employee has standing to pursue a claim against a federal employer under Title VII, he must first exhaust the available administrative remedies by proceeding before the agency charged with the discrimination."). Failure to comply generally mandates dismissal of a suit. *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)).

Notably, even when a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process. To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look *only* to the charge filed with that agency." *Balas*, 711 F.3d at 408 (emphasis added); *see also Chacko*, 429 F.3d at 506 ("This charge frames the scope of future

litigation."); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint.").  Although courts "recognize that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," courts are "not at liberty to read into administrative charges allegations they do not contain."  *Balas*, 711 F.3d at 408 (citations and quotation marks omitted).  Rather, courts are constrained by the four corners of the charge and the inference of "'any charges that would naturally have arisen from an investigation thereof . . . .'"  *Id.* at 407–08 (citations omitted).

"The touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same . . . ."  *Sydnor*, 681 F.3d at 595.  In *Sydnor*, the Fourth Circuit said, *id.* at 594: "[A]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit."  *Accord Southpeak Interactive Corp. of Del.*, 777 F.3d at 669; *Calvert Group, Ltd.*, 551 F.3d at 300; *Evans*, 80 F.3d at 963.

*Talbot v. Foodservice, Inc.*, 191 F. Supp. 2d 637 (D. Md. 2002), is instructive.  In *Talbot*, a former employee of defendant brought an action for employment discrimination under Title VII and under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA").  In granting summary judgment against the employee's claim under the ADA, the court noted: "Plaintiff failed to check the box next to 'disability' in the 'cause of discrimination' section of his EEOC charge.  Instead, he checked only the box next to 'race.'"  *Talbot*, 191 F. Supp. 2d at 640.  Additionally, plaintiff "did not mention anywhere in the charge, including in

the factual narrative, that he was disabled. Rather, his charge alleged only race discrimination and cited a cause of action under Title VII, not the ADA." *Id.*; *see also Calvert Group*, 551 F.3d at 301 (finding that district court properly determined that plaintiff failed to exhaust her administrative remedies with respect to age, sex, and race discrimination because plaintiff did not check the corresponding boxes on her EEOC charge); *Belyakov v. Medical Science & Computing*, 86 F. Supp. 3d 430, 440 (D. Md. 2015) (finding that plaintiff failed to exhaust his administrative remedies as to discrimination on the basis of national origin because he did not "check the box for national origin discrimination in his charge" or claim such discrimination in the narrative portion of the Charge); *Byington v. NBRS Fin. Bank*, 903 F. Supp. 2d 342, 350 (D. Md. 2012) (same, for age discrimination).

### B.

As noted, on April 24, 2015, Fonjungo filed a Charge with the EEOC alleging that Rite Aid had discriminated against him on the basis of age by, *inter alia*, holding him "to a higher standard that the other similarly situated Pharmacists" and by terminating his employment. ECF 25-2 at 3-4.

In the section of the Charge pertaining to basis of discrimination, Fonjungo ticked only the box next to age. *See* ECF 25-2 at 3. He did not check the boxes adjacent to race, color, sex, national origin, or religion. *See id.* Nor did he check the box for retaliation. *See id.* Moreover, in the description section of the Charge, Fonjungo solely referenced discrimination on the basis of age. *See id.* at 3-4. There is no reference to discrimination on the basis of any of the classes protected by Title VII, nor is there any allegation of retaliation. *See id.*

In the Motion, Rite Aid argues, *id.*: "Plaintiff's retaliation claim must be dismissed because he failed to exhaust his administrative remedies with the EEOC." ECF 25-1 at 4. In

particular, Rite Aid observes that the Charge "only set forth allegations in support of his ADEA claim." *Id.* Thus, according to Rite Aid, the failure to raise the retaliation claim in the Charged "deprived the [EEOC] of its statutory authority to investigate the claim and denied Rite Aid its right to be placed on notice of his claim." *Id.*

On the Charge form, Fonjungo did not check any of the boxes for discrimination based on race, color, sex, religion, or national origin. *See* ECF 25-2 at 3. Nor did he check the box for retaliation. *See id.* Moreover, nowhere in the description section of the Charge did Fonjungo allege that he was discriminated against on the basis of any of the classes protected by Title VII, or that he was the victim of retaliation. *See id.* at 3-4. Moreover, none of the assertions in the Charge pertaining to age discrimination is reasonably related to discrimination in violation of Title VII.

In his Opposition, Fonjungo does not contest that he failed to raise allegations of discrimination on the basis of one of the protected classes in Title VII or retaliation for engaging in a protected activity. *See* ECF 29. He also does not contest that he failed to check the box indicating discrimination based on race, color, sex, religion, national origin, or retaliation. *See id.* However, in Fonjungo's view, the Court's denial of Rite Aid's exhaustion argument in its prior ruling on Rite Aid's first motion to dismiss precludes the consideration of that argument here. *Id.* at 2.

Fonjungo is correct that I previously denied Rite Aid's first motion to dismiss (ECF 6), in which Rite Aid argued, *inter alia*, exhaustion. *Id.* But, I never addressed the merits of the exhaustion argument. *See* ECF 17. In particular, in my Memorandum (*id.*), I explained that I was denying Rite Aid's motion to dismiss (ECF 6) Fonjungo's supposed Title VII claim in ECF 1, because I did not believe that plaintiff had intended to pursue a claim under Title VII.

ECF 17 at 2.  I said, *id.*: "[I]t does not appear that plaintiff ever intended to bring claims under Title VII . . . .  Therefore, I shall deny defendant's Motion, as moot."  However, I allowed plaintiff to amend the suit to add a Title VII claim, if that was plaintiff's intention.  ECF 18.  As a result, Rite Aid is not precluded from reasserting here the exhaustion claim that it raised in ECF 6, because I never addressed the issue.

In my view, dismissal is appropriate as to Fonjungo's Title VII claim because he failed to exhaust his administrative remedies by raising that claim in his Charge with the EEOC, as required by the statute.  *See* 42 U.S.C. § 2000e–5(f)(1).  As indicated, an aggrieved party who fails to exhaust his administrative remedies by filing a proper charge with the EEOC is barred from filing suit.  *See Balas*, 711 F.3d at 407.  And, even where a plaintiff has filed a charge with the EEOC, the Court cannot consider matters not properly raised before the EEOC.  *Id.* at 408.

### IV.    Conclusion

In sum, Fonjungo failed to exhaust his administrative remedies as to his Title VII claim because the claim in the Charge is not reasonably related to his claim under Title VII.  *See, e.g.*, *Sydnor*, 681 F.3d at 595.  Therefore, the Court lacks jurisdiction to consider that claim.  *Balas*, 711 F.3d at 406.[6]

Accordingly, I shall GRANT the Motion as to plaintiff's Title VII claim, pursuant to Fed. R. Civ. P. 12(b)(1).  However, plaintiff's claim under the ADEA shall proceed.

An Order follows, consistent with this Memorandum.


Date:  April 28, 2017                                    _____/s/_____
                                                        Ellen Lipton Hollander
                                                        United States District Judge

---

[6] Even if the Court has jurisdiction, plaintiff has failed to state a Title VII claim under Rule 12(b)(6).